UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,

v.                             Case No.:  8:25-cv-01454-SDM-NHA

CEMEX CONSTRUCTION
MATERIALS FLORIDA, LLC,

     Defendant.

_____/

## ORDER

The Equal Employment Commission (EEOC) moves to compel certain responses to its requests for production. Doc. 31. I grant the motion, in part.

### I. Background

Amanda Textor worked for Defendant Cemex Construction Materials Florida, LLC, as a Ready-Mix driver trainee, for a week in October 2023. The EEOC initiated this case on June 4, 2025, alleging that Defendant unlawfully refused to accommodate Ms. Textor's religious practice, by forbidding her to wear a skirt at work, and by subsequently terminating her. Doc. 1.

In the present motion, Plaintiff moves to compel Defendant to produce materials responsive to several of Plaintiff's requests for production. Doc. 31.

Defendant opposes the motion, arguing that the requests are irrelevant, unduly burdensome, and disproportionate to the needs of the case. Doc. 35.

## II. Legal Authority

The Court has "broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of discovery, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "The party resisting production of information bears the burden of establishing . . . undue burden in supplying the requested information." *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000).

However, Rule 26(b) also provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

III. **Analysis**

On September 29, 2025, Plaintiff served Defendant with 57 Requests for Production, along with an extensive list of "Proposed ESI Search Terms" (Doc. 35-1 p. 24), which terms it later revised (Doc. 35-2). The requests sought material from September 1, 2023 to the present. Doc. 35-1 p. 24.

    a.  <u>Requests 24 and 25</u>

Plaintiff's 24th Request sought "Documents concerning or reflecting communication (including emails and text messages) between Ms. Textor and John Rawls, TJ Paul, Sophia Husebo, Julian Riffaud, Justin Latessa, and/or Clyde 'Gator' Fortner." Doc. 35-1. p. 10.

Plaintiff's 25th production request sought:

> Documents concerning or reflecting communication (including emails and text messages) that were sent or received by John Rawls, TJ Paul, Sophia Husebo, Julian Riffaud, Justin Latessa, Clyde "Gator" Fortner, Defendant's management personnel, and/or Defendant's human resources personnel about any of the following: (1) Ms. Textor; (2) Defendant's dress or grooming policies or dress code; (3) the ability to wear a skirt in the Mixture Truck Driver or Ready-Mix Driver position(s); and (4) religious accommodations relating to Defendant's dress code and/or safety policies.

*Id.*

Plaintiff takes issue with the procedures Defendant used to identify documents responsive to these requests. Plaintiff asks the Court to issue orders designed to remedy what Plaintiff views as Defendant's procedural missteps. Plaintiff's concerns are well-taken.

### i. *Request for Hit Reports*

Plaintiff moves to compel Defendant to produce "hit reports" showing the number of documents returned by each of the search terms Plaintiff proposed for finding documents responsive to Requests 24 and 25. I grant the request.

In response to Requests 24 and 25, Defendant initially produced no email, but later produced some email. Doc. 31 p. 4 n. 4. Defendant has now produced approximately 500 pages of responsive documents. Doc. 35 p. 7.

Defendant acknowledges that its response did not include all documents responsive to Plaintiff's search terms. However, Defendant explains, "[u]pon receiving Plaintiff's initial search terms, Defendant ran a search utilizing those terms, which pulled 245.17 [gigabytes] of emails, amounting to approximately 120,000 emails." Doc. 35 p. 8. So, finding review of the responsive materials to be unduly burdensome, Defendant unilaterally added the required term "Textor*" to each of the search terms, "to significantly reduce the results to a manageable 1.08 [gigabytes] of emails, which resulted in approximately 550 emails to review." Doc. 35 p. 9.

Requests 24 and 25 appear to seek relevant information. However, Plaintiff attempts no showing as to why each of the search terms it proposes is likewise reasonably calculated to lead to relevant information. And the Court agrees that requiring Defendant to search 120,000 emails in response to these two requests is likely unduly burdensome.

4

However, Plaintiff wished to work with Defendant to narrow its requests. Indeed, Plaintiff requested hit reports for precisely that purpose. Defendant refused to provide hit reports and instead unilaterally chose to add "Textor*" to every search term. This method appears highly likely to exclude documents responsive to Plaintiff's relevant requests.

Because the method Defendant used to identify documents responsive to Requests 24 and 25 appears insufficient, I grant Plaintiff's motion to compel hit reports. The request for hit reports appears to be a reasonable means to facilitate a bilateral attempt to narrow an otherwise substantial discovery request. *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 15 SEDONA CONF. J. 217, 225 (2014) ("Parties and their counsel should make a good faith attempt to cooperate when determining the use of particular search and information retrieval methods, tools, and protocols (including keywords . . . and other types of search parameters and quality control measures[)].").

> ii. *Request to Compel an Attorney-Directed and Supervised Search of Employee Cellphones*

Next, Plaintiff asks the Court to order Defendant to conduct an attorney-directed and attorney-supervised search of its custodians' cellphones to identify and collect communications responsive to Requests 24 and 25. I grant the request.

Plaintiff explains that Defendant admittedly allowed employees to identify and collect responsive documents from their own cellphones. Doc. 31 p. 9. Plaintiff noticed that Defendant did not produce certain texts that Plaintiff knew to be responsive, and when asked about the omissions, defense counsel could not say how the searches or collections were done or explain the omissions. *Id.*

Defendant does not dispute that it asked its custodians to search and collect materials from their own devices. Doc. 35 p. 11. And Defendant does not explain the specific protocols provided to, or used by, the custodians, or proffer any procedures that counsel used for quality assurance. Rather, Defendant argues that the attorney-directed and supervised search is unnecessary, because the custodians themselves say there are no more responsive documents, the search is intrusive, and Plaintiff has not suggested any discovery malfeasance. *Id.* pp. 10-11.

Defendant's argument misses the mark. An attorney is responsible for certifying discovery responses, and that obligation requires an attorney to be confident in the integrity of the underlying search, collection, and production procedures. Fed. R. Civ. P. 26(g); *EEOC v. M1 5100 Corp.*, No. 19-cv-81320, 2020 WL 3581372, at *2 (S.D. Fla. July 2, 2020). Here, Defendant does not offer any such assurance. And, without suggesting malfeasance, Plaintiff demonstrates that the lay persons conducting the review and collection missed

6

relevant responsive documents.[1] Thus, Plaintiff demonstrates error with Defendant's collection process that Defendant does not address. This provides a reasonable basis for Plaintiff's request.

As to the intrusiveness of the procedures, Plaintiff notes that Defendant itself tells employees they have "no reasonable expectation of privacy with respect to anything created, stored, sent or received on the mobile electronic device whether using the remote network access or any other personal system, application or program on the device," and requires employees to give Defendant "the right to obtain possession of the [employee's personal] mobile electronic device . . . for litigation or other purposes." Doc. 31 p. 11. Moreover, Plaintiff points out that Defendant need not produce anything to Plaintiff beyond the responsive documents. But, in any event, Defendant proffers no reasonably reliable less intrusive alternative.

In light of the omissions in Defendant's response to Requests 24 and 25, and of Defendant's declination to describe or propose any protocol or quality assurance procedures other than attorney participation, Plaintiff's request is reasonable, and I grant it.

---

[1] Defendant does not explain the initial omissions. Instead, it seeks to minimize them, stating "Plaintiff points to a minimal number of text message correspondences that weren't produced." Doc. 35 p. 11. But, given that a total of 7 pages of text messages *were* produced,  a small number of responsive texts appears proportionally significant.

7

b. Plaintiff's Request to Compel Documents Regarding the Mixture Truck Driver/Ready Mix Driver Position (Request 6)

Plaintiff asks the Court to compel Defendant's response to its sixth request for production, which seeks: "Documents sufficient to show position descriptions, requirements, duties, qualifications, performance metrics, and/or performance review documents for the Mixture Truck Driver or Ready-Mix Driver positions(s) with Defendant, and any changes thereto, from January 2023 through present." Doc. 35-1 p. 6. I grant the request to the extent it seeks performance review documents.

Defendant has produced the applicable safety policies and a safety video, along with a job description for the Ready-Mix driver, which "outlines in detail the job responsibilities, qualifications, knowledge, skills and abilities needed, working conditions, and physical requirements of the Ready-Mix Driver position." Doc. 35 p. 13. And Defendant explains that "Defendant does not have a set of documented performance metrics." Doc. 35 p. 12. But Defendant claims that, to the extent Request 6 seeks more than what Defendant has produced, it is unduly burdensome, because it "seeks any document that even references a Ready-Mix driver's performance (texts, emails, etc.), at any plant throughout the Company." Doc. 35, p. 12,

8

First, the request appears to be relevant to whether wearing a skirt violated Defendant's safety standards and whether Plaintiff would have been otherwise qualified to perform the job.

Second, both parties mischaracterize the wording of the request, which seeks only "documents sufficient to show" various aspects of the Ready Mix driver position. Plaintiff's motion suggests Defendant owes to it every document that "reflects upon . . ." the listed topics. Doc. 31 p. 13. Defendant says the request calls for every document that "even references" the topics. Doc. 35 p. 12. Were this so, I might agree that such a request would be overbroad. However, as the actual request seeks only documents "sufficient to show" the listed characteristics of the job. I do not find the request, as written, to be overbroad, and Defendant makes no showing that the request, as written, is unduly burdensome.

Finally, it appears that Defendant has largely complied with the request. It has produced a document that provides the "position descriptions, requirements, duties, qualifications." It claims it has no "performance metrics" documents; so long as it certifies in a response that this is the case, it will satisfy its obligation as to that aspect of the request as well. This leaves solely the "performance review documents." Defendant does not state whether it has such documents nor demonstrate that producing such documents would be unduly burdensome. Therefore, I grant Plaintiff's request to the extent

Defendant is directed to certify, if accurate, that it has no documents reflecting "performance metrics," and to produce any performance review documents for the relevant period, or certify that it has none in its possession.

### c. Plaintiff's Request to Compel Production of Personnel Files (Request 44)

Plaintiff next asks the Court to compel production of certain personnel files responsive to Request 44. Doc. 31 pp. 13–14. I deny the request.

In its motion, Plaintiff did not explain what in the personnel files was relevant to the case, but merely asserted the material was relevant, "because each individual is identified on Defendant's initial disclosures and were involved in, or have personal knowledge of, the facts underlying this action." Doc. 31 p. 14. But, in any event, Defendant has now "produced all of the personnel files requested for the relevant witnesses in this matter. Defendant has only redacted the confidential information contained in each file, such as social security numbers or addresses." Doc. 35 p. 14. In light of this representation, I deny Plaintiff's request as moot.

### d. Plaintiff's Request to Compel Wage and Benefit Information for the Ready-Mix Driver Position in Zephyrhills (Request 29)

Plaintiff asks the Court to compel documents responsive to Request 29. Doc. 31 pp. 15–16. I grant this aspect of the motion.

Request 29 seeks production of "documents sufficient to show"—for Mixture Truck or Ready-Mix Drivers based in Zephyrhills from 2023 to present—"total compensation, itemized by hours worked, rate of pay, overtime hours worked, overtime rate of pay, bonuses awarded, and value of benefits paid by Defendant, on a per pay-period basis from October 1, 2023 to present." Doc. 35-1 pp. 10–11. Plaintiff explains that this information relates to its claim for backpay, which is based on "what Ms. Textor would have earned had she remained employed." Doc. 31 p. 14.

In response to Request 29, Defendant provided only "its Forida Non-Union wage scale," which "depicts the hourly wage for all its Florida non-union positions from the start of employment up to 28 years of employment," and Textor's own pay record. Doc. 35 p. 15. Defendant argues that the other materials Plaintiff requests are unnecessary to prove Textor's damages, and that other workers' bonuses "are often discretionary, individualized, and dependent on factors unrelated to [Textor's] situation." Doc. 31 p. 15.

However, "[e]vidence of the salaries paid to other individuals may be relevant to [a backpay] calculation," if "the plaintiff lays a sufficient foundation to permit the reasonable inference that his salary would have matched or been pegged to the salaries of others." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 166 (2d Cir. 1998). Thus, the information Plaintiff seeks is relevant to Plaintiff's claim.

11

Whether it will ultimately be admissible is another matter and one that does not require resolution here.

Defendant further argues that the information Plaintiff seeks is "intrusive of third-party privacy," but also acknowledges that specific information may be redacted to protect third parties. Doc. 35 pp. 15–16. And, to the extent Defendant argues that collection, review, and redaction of pay documents would impose "significant burden and expense," Defendant does nothing to quantify or otherwise specify why this is so. *See* Middle District Discovery (2021) at Section III. A. 6. ("OBJECTIONS. . . . Objections to requests for production should be specific, not generalized"); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) ("Objections which state that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are deemed without merit by this Court. A party properly objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome."); *Ortiz v. Pin UPS of Daytona Beach, LLC,* No. 619CV1644ORL37LRH, 2020 WL 10456853, at *3 (M.D. Fla. July 31, 2020) ("boilerplate objections are meaningless and meritless and are due to be overruled").

Because Defendant has not sufficiently supported its objection to a facially relevant request,[2] I grant Plaintiff's request to compel documents responsive to Request 29.

e. Plaintiff's Request to Compel Religious Accommodation Processes and Procedures (Request 34)

Plaintiff next asks the Court to compel production of "[d]ocuments concerning or reflecting Defendant's processes or procedures for receiving, handling, evaluating, and responding to requests for religious accommodations," responsive to Request 34. Doc. 35-1 p. 11. I deny the request as moot.

In response to the motion, Defendant claims that it has produced its "its Non-Discrimination/Anti-Harassment Policy and Complaint Procedure" and "its Code of Ethics," and that it "does not have any additional documents in its possession, custody, or control in response to this Request." Doc. 35 p. 16. So long as Defendant has certified that this is so, the request is moot.

f. Plaintiff's Request to Compel Religious Discrimination Training (Request 38)

---

[2] *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000) ("The party resisting production of information bears the burden of establishing . . . undue burden in supplying the requested information."); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 689 (S.D. Fla. 2011) ("As the party resisting discovery, Schmidt has the burden to demonstrate specifically how the request is unreasonable or not relevant.").

Plaintiff also moves to compel Defendant to produce material responsive to Request 38, which seeks "[d]ocuments sufficient to show training about religious discrimination provided by Defendant, or a third party on its behalf, to its personnel from 2021 to present, including, but not limited to, agendas, training materials, and documents showing the attendees, dates, and locations of each training session." Doc. 35-1 p. 11. I grant the request.

Plaintiff claims this material is relevant to its request for punitive damages, its request for injunctive relief (which would require Defendant to institute related policies, practices, and programs), and to Defendant's affirmative defense that it took the relevant employment actions in good-faith (*see* Doc. 24 p. 7). Doc. 31 p. 17.

Defendant objects to Request 38, claiming it is irrelevant, overbroad, and disproportionate. Doc, 35 p. 16. Defendant elaborates that "training conducted at plants where [Textor] never worked, where none of Defendant's witnesses worked, and during periods of time when [Textor] was not even employed is wholly irrelevant to this matter." Doc. 35 pp. 16–17. Defendant adds, "after conducting a search for relevant documents responsive to this Request, Defendant further asserts during the relevant period (2023) no training specific to religious accommodation occurred at the Zephyrhills plant." Doc. 35 p. 17.

14

Whether Defendant, broadly, or any actors here, had information about the law concerning religious accommodation prior to the actions at issue appears relevant to Plaintiff's claim for punitive damages.  And, any later training would clearly relate to Plaintiff's request for injunctive relief.

Given that Defendant, again, does nothing to demonstrate any burden associated with responding to this request, I grant Plaintiff's motion as to Request 38.

g.  Plaintiff's Request to Compel Financial Worth Materials

Finally, Plaintiff seeks to compel Defendant to produce a response to Request 50. I grant the request.

Request 50 seeks, "[f]or each fiscal year from 2025 through the present":

> (i) audited financial statements (or unaudited if audited not available); (ii) documents sufficient to show Defendant's gross income, net income, and expenditures; (iii) Defendant's profit and loss statements; (iv) Defendant's complete state and federal corporate tax returns; and (v) Defendant's annual reports (that reflect its income) that it caused to be filed with any government department or agency.

Doc. 35-1 p. 13.

Plaintiff alleges this is relevant to its request for punitive damages. Doc. 31 p. 17. Defendant claims the request is unduly burdensome. Doc. 35 p. 17.  It adds that, because Defendant is a subsidiary: (1) "There are no standalone financial documents, *specific to Defendant*, that are in Defendant's possession,

15

custody, and control," and "Plaintiff has access to the public company's available filings, which provide the financial information sought without necessitating intrusive discovery into Defendant's internal corporate records." Doc. 35 pp. 17–18.

The request is clearly relevant to Plaintiff's request for punitive damages, and Plaintiff appears to have attempted to reduce the burden of the request by limiting the responsive period from fiscal year 2025 to the present. While the Court may have been receptive to the claim that requesting each of these categories of documents was disproportionate or unduly burdensome, Defendant makes no effort to specify the burden. *See Gober*, 197 F.R.D. 519 at 521 ("The party resisting production of information bears the burden of establishing . . . undue burden in supplying the requested information."). Defendant has, therefore, failed to support its objection.

The Court grants the motion as to Request 50.

> h.   Plaintiff's Request for Fee Shifting

Finally, Plaintiff seeks an award of expenses that it incurred in moving to compel. Rule 37(a)(5) provides, regarding "Payment of Expenses; Protective Orders":

> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct

16

necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)   other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5). Defendant claims an award of fees is inappropriate here because its objections were substantially justified.  Doc. 35 p. 18.

A party's position in a discovery dispute is "substantially justified" if it represents a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up).

Here, I ruled in part for each party. And, while it is a close call, I do not find that any party's position was so unreasonable as to justify fee shifting. Accordingly, I deny Plaintiff's request for expenses.

## IV. Conclusion

1. For these reasons, Plaintiff's motion is GRANTED to the extent that, **on or before April 24**, Defendant must:

17

a. Produce a "hit report" showing the documents returned for each of Plaintiff's proposed search terms relating to Requests 24 and 25, to facilitate the negotiation of an acceptable production;

b. Produce the Performance Review documents responsive to Request 6;

c. Produce all outstanding documents responsive to Requests 29, 38, and 50; and

d. Conduct an attorney-directed and supervised review of custodians' cellphones for materials responsive to Requests 24 and 25 and produce any outstanding responsive documents.

2. The motion is otherwise denied.

DONE and ORDERED on April 3, 2026.

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE